UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Melissa Anne Egan
        v.                          Civil No. 11-cv-147-JL
                                    Opinion No. 2012 DNH 025
Michael J. Astrue, Commissioner,
Social Security Administration


**MEMORANDUM ORDER**

This is an appeal from the denial of a claimant's
application for Social Security Disability Benefits.  See 42
U.S.C. § 405(g).  The claimant, Melissa Anne Egan, contends that
the administrative law judge ("ALJ") incorrectly found that
although Egan was severely impaired by degenerative disc disease,
fibromyalgia, and a depressive disorder, Admin. R. 9;[1] see 20
C.F.R. §§ 404.1520 (a),(c), she retained the residual functional
capacity[2] ("RFC") to perform light work "involving only
occasional contact with supervisors, coworkers [sic] and the
public."  Admin. R. 11; see 20 C.F.R. § 404.1567(b).  Egan also

_____

[1]The court will reference the administrative record ("Admin.
R.") to the extent that it recites facts contained in or directly
quotes documents from the record.  Cf. Lalime v. Astrue, No. 08-
cv-196-PB, 2009 WL 995575, at *1 (D.N.H. Apr. 14, 2009).

[2]"Residual Functional Capacity" is defined as "an assessment
of an individual's ability to do sustained work-related physical
and mental activities in a work setting on a regular and
continuing basis.  A 'regular and continuing basis' means 8 hours
a day, for 5 days a week, or an equivalent work schedule."  SSR
96-8p, 1996 WL 374184, at *1 (July 2, 1996).

alleges that it was error for the ALJ to conclude that she remained capable of performing past employment, see 20 C.F.R. § 404.1520(a)(4)(iv), or, in the alternative, that given Egan's mental limitations, there remained a significant number of jobs available to her in the national economy.[3]  Admin. R. 13-14; see 20 C.F.R. § 404.1520(a)(4)(v).  Specifically, Egan contends that the ALJ committed reversible error because he:

> (1) did not grant controlling weight to the opinions of her treating medical providers when formulating Egan's RFC, Cl. Br. 3-10, see generally 20 C.F.R. §§ 404.1502, 404.1527(d); SSR 96-2p, 1996 WL 374188 (July 2, 1996), and

> (2) improperly determined at Step 4 that Egan was capable of performing her past relevant work as a secretary in light of her functional limitations, Cl. Br. 10-11; see 20 C.F.R. § 404.1520(a)(4)(iv), and

> (3) given her mental impairments, the ALJ improperly relied on the Medical-Vocational Guidelines ("the Grid"), see generally id. §§ 404.1520(a)(4)(v), pt. 404, subpt. P, App. 2; 404.1560(g), to conclude in the alternative that she was capable of performing numerous other jobs in the national economy.  Cl. Br. 11-12.

---

[3]The social security regulations set forth a five step procedure to determine if a claimant is disabled.  20 C.F.R. § 404.1520(a)(4).  The claimant bears the burden in the first four steps to show that: (1) she is not engaged in substantial gainful activity; (2) she has a severe impairment; (3) the impairment meets or equals a specific impairment listed in the Social Security regulations; or (4) the impairment prevents or prevented her from performing past relevant work.  At Step 5 of the analysis, it is the Commissioner's burden to establish that jobs exist in the national economy given the claimant's impairments, age, education, and work experience.  See id.

The Commissioner asserts that the ALJ's findings are supported by substantial evidence in the record, and moves for an order affirming his decision.  This court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 405(g) (Social Security).  After a review of the administrative record, the court denies Egan's motion and grants the Commissioner's motion.

## I.   **APPLICABLE LEGAL STANDARD**

The court's review under Section 405(g) is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); see Simmons v. Astrue, 736 F. Supp. 2d 391, 399 (D.N.H. 2010).  If the ALJ's factual findings are supported by substantial evidence in the record, they are conclusive, even if the Court does not agree with the ALJ's decision and other evidence supports a contrary conclusion. See Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 535 (1st Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted).  The ALJ is responsible for determining issues of credibility, resolving conflicting evidence, and drawing inferences from the evidence in the record. See

Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222
(1st Cir. 1981); Pires v. Astrue, 553 F. Supp. 2d 15, 21 (D.
Mass. 2008) ("resolution of conflicts in the evidence or
questions of credibility is outside the court's purview, and thus
where the record supports more than one outcome, the ALJ's view
prevails").  The ALJ's findings are not conclusive, however, if
they were "derived by ignoring evidence, misapplying the law, or
judging matters entrusted to experts." Nguyen, 172 F.3d at 35.
If the ALJ made a legal or factual error, the decision may be
reversed and remanded to consider new, material evidence, or to
apply the correct legal standard.  Manso-Pizarro v. Sec'y of
Health & Human Servs., 76 F.3d 15, 16, 19 (1st Cir. 1996); see 42
U.S.C. § 405(g).

## II.  BACKGROUND

    Pursuant to this court's local rules, the parties filed a
Joint Statement of Material Facts (document number 10), which is
part of the record reviewed by the court.  See LR 9.1(d).  This
court will briefly recount the key facts and otherwise
incorporates the parties' joint statement by reference.

    Egan filed a request for Disability Insurance Benefits and
Supplemental Security Income in January 2009 alleging an onset of
disability in August 2008 due to, inter alia, anxiety,

4

depression, hip and back pain, and fibromyalgia.  See Admin. R.
111.  She was 31 years old at the date of filing.  Id. at 96.

At the hearing, Egan testified that her mental impairments
limited her ability to interact with people and be a dependable
worker, while her physical limitations rendered her unable to
lift anything over 10 pounds on a regular basis, and made her
unable to reach and bend.  She also claimed that she could not
sit or stand for any appreciable amount of time.  Id. at 26, 32-
34.  Egan stated that she was incapable of performing her prior
work as a licensed nurse's aid, because it is a physically
demanding position and she finds interacting with others unduly
stressful.[4]  Id. at 36-37.  Egan also testified that she left a
job as a copy clerk for the Registry of Deeds because it required
too much lifting and she "did not get along with my coworkers
[sic]."[5]  Id. at  37-38.  Finally, she testified that she left a
job as a legal secretary because she didn't get along with others
and had difficulty handling criticism from her boss.  Id. at 38.
Egan stated that she would be unable to perform any secretarial

_____

[4]Egan stated that she had difficulty working as an aide in a
private home because the client's family "stressed me out so bad
I basically told them where to stuff it."  Id. at 36.  Similarly,
in an institutional placement, she claimed to struggle to
interact appropriately with co-workers.  Id. at 37.

[5]There is no evidence in the record that Egan was ever fired
from a position due to an inability to interact with other
people.  Id. at 139.

work because it involves "lifting . . . sitting for long periods
of time, dealing with customers or people coming into the
[office]."  Id. at 39.

The ALJ concluded that Egan was severely impaired by
"degenerative disc disease, fibromyalgia, and depressive
disorder."  Id. at 9.  The ALJ did not find these conditions to
be disabling, noting that an exam at the Dartmouth Hitchcock
Spine Center in August 2009 revealed "no true myelopathic
symptoms[4] and it was questioned if the claimant actually had any
radicular[5] symptoms," and at that time "[i]t was determined the
claimant could perform full-time sedentary work."  Admin. R. 12.
The ALJ also stated that by April 2010, Egan's primary care
physician "noted that the claimant's conditions were stable
overall, and her pain was reasonably well controlled with
medication,"[6] and that Egan's primary care physician "recommended

---

[4]"Myelopathy" refers to "any of various functional
disturbances or pathological changes in the spinal cord."
Dorland's Illustrated Medical Dictionary, 1239 (31st ed. 2007).

[5]"Radicular" pertains to "any one of the smallest branches
of a vessel or nerve."  Id. at 1595.  "Radiculitis" is the
"inflammation of the root of a spinal nerve," while
"radiculalgia" is "pain due to disease of the spinal nerve
roots."  Id.

[6]As discussed in detail, supra, ten months earlier, Egan's
physician, Dr. David B. Richardson, placed some limitations on
Egan's ability to lift over 10 pounds, bend and twist, and engage
in repetitive walking, standing or sitting.  Id. at 266.  Dr.
Richardson, however, noted that the restrictions were in effect
for only 30 days.  Id.  There is no evidence in the record that

the claimant do approximately 40 minutes of cardiovascular exercise per day" to help control her fibromyalgia.  Id. at 12-13.

The ALJ concluded that although "the record does document chronic depression," Egan's hearing testimony that her mental illness (in particular, her inability to function socially) was disabling was inconsistent with the record.  The ALJ noted that in her self-function report, Egan "reported a wide range of activities of daily living and even described her schedule as 'hectic.'"[7]  Id. at 13, 137.  The ALJ had earlier concluded,[8] based on Egan's self-function report and an exam by Dr. William Swinburne, Ph.D., that Egan exhibited only mild difficulties in daily activities and concentration, persistence and pace and had

these restrictions were extended beyond thirty days, and, as the ALJ noted, Dr. Richardson believed by May of 2010 that Egan's pain was well controlled and that her fibromyalgia could be treated with exercise.  Dr. Richardson's partner, Dr. Theodore A. Ruel, similarly opined that because "[t]he findings on her MRI are modest," surgical intervention was "ill advised" and that he had "nothing to offer her further in terms of diagnostics or therapeutic interventions."  Id. at 520.

[7]The ALJ observed that in this function report, Egan stated "that [in] a typical day she gets the children off to school in the morning, runs errands, takes her children to appointments, does grocery shopping, performs upkeep of the house, makes dinner, helps . . . with homework. . . .[Egan] noted that she does [leisure] activities when her time allows as she has a 'hectic' schedule."  Id. at 10.

[8]These finding were made in the context of whether Egan suffered from a "listed" impairment.  See 20 C.F.R. § 404.1520(a)(4)(iii).

never had an episode of decompensation.  Admin. R. 10-11, 133-40,
411-15.  The ALJ also concluded, based on this same evidence,
that Egan had "moderate difficulties" in social functioning
because of her tendency to be irritable, withdraw from people,
and exhibit "mild road rage."  Id. at 10.  The ALJ found Egan's
social functioning only moderately impaired based on Dr.
Swinburne's note that although Egan felt that "some people"
"cannot take her 'directness' and view her as a 'witch'," Dr.
Swinburne believed "[i]n other interactions [Egan] can relate
reasonably well in public."  Id. at 10, 414.  Further, the ALJ
considered Egan's own report that she lived with her boyfriend,
another friend and multiple children, and often visits her
parents, talks with friends on the phone, and takes her children
to appointments and to school.  Id. at 10.

The ALJ gave minimal weight to the opinion of treating
psychologist, Dr. Meghan Estey, Psy.D., that Egan's mental issues
would interfere with her ability to work more than 10-19 hours
per week.  Id. at 13, 552.  The ALJ instead decided to credit Dr.
Swinburne's conclusion that Egan retained the ability to complete
basic work related tasks, but "her emotions could be volatile and
as such, her ability to work out interpersonal difficulties may
be limited; at other times her relations with coworkers [sic]
would be superficially good."  Id. at 13, 415.

8

The ALJ accordingly found that Egan has the residual functional capacity to perform light work, see 20 C.F.R. § 404.1567(b), "involving only occasional contact with supervisors, coworkers [sic] and the public." Admin. R. 11. The ALJ thus concluded that Egan was capable of performing her past work as a secretary, and, in the alternative, that there are a significant number of jobs available to her in the national economy, and she is not disabled. Admin. R. 13-14; see 20 C.F.R. §§ 404.1520(a)(4)(iv)-(v). This appeal followed.[9]

## III. **ANALYSIS**

A five-step process is used to evaluate an application for social security benefits. 20 C.F.R. § 404.1520(a)(4). The applicant bears the burden through the first four steps to show that she is disabled.[10] Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At the fifth step, the Commissioner bears the burden of showing that a claimant has the residual functional

---

[9]The Decision Review Board, see generally 20 C.F.R. § 405.401, did not complete its review of the ALJ's denial in a timely fashion, Admin. R. 1, rendering the ALJ's order a final decision of the Commissioner appealable to this court. See 20 C.F.R. § 405.415.

[10]The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(A).

capacity to perform other work that may exist in the national

economy.  Id.; see also 20 C.F.R. § 404.1520(a)(4)(v); Heggarty

v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).  The ALJ's

conclusions at steps four and five are informed by his assessment

of a claimant's RFC, which is a description of the kind of work

that the claimant is able to perform despite her impairments.  20

C.F.R. §§ 404.1520(a)(4), 404.1545.

## A. Medical opinion

Egan first contends that the ALJ erred in failing to grant

controlling weight to the opinion of Dr. Estey, Egan's treating

psychiatrist.  Dr. Estey's succinct functional analysis of Egan's

ability to work consisted of a notation that:

> [Egan's] symptoms of depression and other mental
> illness affect her activities of daily living and her
> ability to interact appropriately with others, adapt to
> change, and work. . . . It is my opinion, that her
> mental illness will continue to significantly impact
> her ability to function at acceptable levels in the
> world for longer than 12 months and that these symptoms
> will interfere with her ability to work more than 10-19
> hours a week.

Admin. R. 552.  Egan states that because Dr. Estey treated her

over twenty times[11] before rendering an opinion that Egan was

---

[11]The court notes, however, that Dr. Estey began treating
Egan in September 2009, one month after she was initially denied
benefits.   Admin. R. 42, 443.   Cf. O'Dell v. Astrue, 736 F.
Supp. 2d 378, 387 (D.N.H. 2010) (less weight given where there is
"potential bias to advocate on claimant's behalf") (quotations,
brackets, and ellipses omitted).

capable only of working 10-19 hours per week, the ALJ erroneously concluded that Egan was capable of full-time work.  The court disagrees.

The decision that a claimant is disabled is reserved to the Commissioner.  See 20 C.F.R. § 404.1527(e)(1); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996).  As such, "[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work'" does not compel a finding that the claimant is disabled. 20 C.F.R. § 404.1527(e)(1).  Still, an ALJ is prohibited from disregarding relevant medical source opinions.  See SSR 96-5p, 1996 WL 374183, at *5.  An ALJ, as a lay person, cannot interpret a claimant's medical records to determine his RFC.  Manso-Pizarro, 76 F.3d at 17.  An ALJ must rely to some degree on RFC evaluations from a physician or another expert.  Id. at 17-18. This does not mean, however, "that there must always be some super-evaluator, a single physician who gives the factfinder an overview of the entire case."  Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987).  That premise "is unsupported by the statutory scheme, . . . case law, or by common sense, for that matter."  Id.  Rather, "an ALJ is entitled to piece together the relevant medical facts from the findings of multiple physicians."  Mulkerron v. Astrue, No. 09-10998-RGS,

2010 WL 2790463, at *9 (D. Mass. July 15, 2010) (quotations omitted).

An ALJ is required to give controlling weight to the opinion of a treating physician "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." Lopes v. Barnhart, 372 F. Supp. 2d 185, 193-94 (D. Mass. 2005) (quotations and brackets omitted); see generally SSR No. 96-2p, 1996 WL 374188, at *1.  Where an ALJ's functional assessment is at odds with a medical source opinion, he must adequately explain his reasons for disregarding that opinion. See 20 C.F.R. § 404.1527(d); SSR 96-8p, 1996 WL 374184, at *7; Marshall v. Astrue, No. 08-cv-147-JD, 2008 WL 5396295, at *3 (D.N.H. Dec. 22, 2008); cf. Monroe v. Barnhart, 471 F. Supp. 2d 203, 211-13 (D. Mass. 2007) (ALJ must give sufficient explanation for adopting contrary view of disability).  Conflicts between treating physicians and a non-treating non-examining doctor is for the ALJ to resolve.  Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 12 (1st Cir. 1982).  The decision to resolve that conflict against the claimant should be affirmed if "that conclusion has substantial support in the record . . . ."  Id.; see also DiVirgilio v. Apfel, 21 F. Supp. 2d 76, 77 (D. Mass. 1998).

The ALJ properly limited the amount of weight given to Dr. Estey's opinion because the record supports the ALJ's conclusion that her assessment is inconsistent with the entire record.  See generally, SSR No. 96-2p, 1996 WL 374188, at *1; Lopes, 372 F. Supp. 2d at 194-95; 20 C.F.R. § 404.1527.  As the ALJ recognized, Egan's "emotions could be volatile" and her "ability to work out interpersonal difficulties may be limited."  Admin. R. 13. Substantial evidence in the record, however, did not indicate that such limitations, in Dr. Estey's words "significantly impact her ability to function at acceptable levels in the world."  Id. at 552.  Egan described, in her function report, an active daily life[12] and indeed Egan stated that she had little time for hobbies "due to [a] hectic schedule."[13]  Admin. R. 137.  Although Egan herself terminated employment during an emotional

---

[12]Egan's depression and irritability did not prevent her from completing a multitude of tasks involving social interactions with friends, roommates, family and the general public.  She described an ability to get children ready for school, run errands, go to family appointments, grocery shop, visit her parents, and talk to friends on the phone.  Id. at 133-34.

[13]The court recognizes that this statement is inconsistent with Egan's testimony at the hearing.  Such conflicts, however, are for the ALJ, not the court to resolve.  See Pires, 553 F. Supp. 2d at 21 (resolution of conflicts outside the purview of the court); cf. DiVirgilio, 21 F. Supp. 2d at 77.

outburst,[14] id., she was never fired from a job for that
behavior.  Id. at 139.

Dr. Estey's opinion also conflicts with the two other
medical source statements in the record.  Both examining
psychologist Dr. Swinburne, and consulting psychologist Dr.
Michael Schneider, failed to find her outbursts disabling.  Dr.
Swinburne examined Egan and produced a lengthy evaluation of her
capabilities.  Id. at 411-415.  In his "Mental Status
Examination," Dr. Swinburne found that Egan was "attentive and
cooperative", exhibited clear and logical thoughts, and had
intact short term and long term memory.  Id. at 413.  He opined
that Egan had a sustained attention span, and "[i]n a work-like
situation  . . . could provide reasonably good attendance
understand and . . . remember short and simple instructions."
Id. at 414.  Dr. Swinburne noted Egan's irritability, but
properly observed that "[i]n other interactions she can relate
reasonably well in public."  Id.  Dr. Swinburne also noted that
although Egan may occasionally be tardy, work attendance would
not be a problem and despite her past conflicts at work, her
"relations with coworkers [sic] could be superficially good."

---

[14]Egan testified that at her last job as an in-home nursing
assistant "interacting with family and company, it just got to be
too much . . . I lost it and told them where to stuff it."  Id.
at 27.

Id. at 415.  Dr. Swinburne did recognize that Egan "may have

difficulty managing some of the stressors that accompany most

jobs," but she could still "focus her attention on tasks for [a]

reasonable period of time."  Id.  His assessment, while

recognizing certain functional challenges, contradicts Dr.

Estey's belief that Egan is very low functioning.[15]

---

[15]Dr. Schneider also completed a mental functional capacity
assessment.  Id. at 417-33.  He did not examine Egan, but based
on her medical records, concluded that although Egan had a severe
impairment, "[i]n an environment where she is in a somewhat
socially isolated workstation and where the supervisory criticism
is not overly critical of her performance, she is able to
interact appropriately with peers and supervisors."  Id. at 433.

Egan agrees that Dr. Schneider's assessment contradicted
that of Dr. Estey.  Cl. Br. 6-7.  She contends, however, that the
ALJ erred because he did not discuss Dr. Schneider's analysis in
the order.  This argument fails because ALJ's are not required to
discuss evidence that is cumulative or does not support the
claimant's position.  See, e.g., Lord v. Apfel, 114 F. Supp. 2d
3, 13 (D.N.H. 2000).

Finally, Egan alleges that the ALJ erred in failing to adopt
a consulting physical therapist's opinion that Egan, based on
cardiovascular health, could only perform sedentary work.  The
ALJ acknowledged this finding, but was not required to adopt it
as a physical therapist is not a "treating source" whose opinion
is given special weight, see 20 C.F.R. §§ 404.1513(a),
404.1527(d), 404.1546.  Moreover, the physical therapist's
conclusion was inconsistent with her own observation that Egan
did not exhibit any myelopathic symptoms, and had questionable
radicular issues, a finding noted by the ALJ.  Admin. R. 12, 436.
Finally, it is well established that functional conclusions about
an ability to perform at a "sedentary" or "light" capacity are
reserved to the Commissioner, see 20 C.F.R. §§ 404.1527(e)(2),
404.1545, who considers all the evidence, and whose RFC
determination will be upheld so long as there is ample record
support.  Accordingly, the court concludes there was no error.

Further, Dr. Estey's functional analysis was rendered in cursory fashion, and as such, the ALJ could properly give it less weight.  See Coggon v. Barnhart, 354 F. Supp. 2d 40, 53 (D. Mass. 2005); 20 C.F.R. § 404.1527(d)(3).  Dr. Estey's opinion was included in a letter to Egan's counsel[16] containing only two substantive paragraphs.  The first paragraph was three sentences long and briefly outlined the history of treatment.  The second paragraph included only four conclusory sentences discussing her opinion that Egan is unable to work.  As seen supra, Dr. Estey's analysis contained no specific reference to either her treatment notes[17] or the medical record in general.  Id. at 552.  An ALJ is

_____

[16]An ALJ may give less weight to an "advocacy opinion."  See, e.g., Coggon, 354 F. Supp. 2d at 53.  In particular, where the record supports the inference that a medical opinion was "obtained specifically for the purpose of bolstering [a claimant's] case", an ALJ can properly give it less weight. O'Dell, 736 F. Supp. 2d at 387; cf. Evangelista, 826 F.2d at 139. Dr. Estey's note began:  "I am writing this letter at the request of Melissa Egan . . . in support of her receiving Social Security."  Admin. R. 552.  The ALJ was therefore entitled to afford Dr. Estey's opinion "minimal weight."  Id. at 13.

[17]The court reviewed Egan's treatment notes from Dr. Estey and Mountain Wellness Associates.  Admin. R. 443-498, 521-549 (notes from September 2009 - July 2010).  The notes contain little discussion of Egan's work conflicts, but dwell almost exclusively with conflict with her ex-husband and his family and her boyfriend's family.  Although Egan sometimes mentions physical pain, id. at 527 (April 27, 2010), treatment notes by her primary care physician, Dr. David. B. Richardson, during that same period note that Egan's "pain has been reasonably well-controlled," and that "[o]verall, she is stable."  Id. at 516 (note from April 2, 2010).  Although Egan described a lot of personal turmoil (mostly due to disappointment and conflict

justified in discounting a medical opinion when that opinion
lacks analysis and reference to supporting medical records. Cf.
Tremblay, 676 F.2d at 13 (treating physician opinion entitled to
no more weight than a consulting physician if the disability
assessment is conclusory).  The ALJ did not err, therefore, in
concluding that "Dr. Estey's opinion is not consistent with the
record in its entirety," and granting that opinion minimal
weight. Id. at 13.

Egan also contends that the ALJ erred in assigning a light
work RFC to Egan because her treating physician, Dr. David B.
Richardson, limited her to sedentary work for 30 days in February
2009.  Cl. Br. 9-10; Admin. R. 266.  This argument lacks merit
because although the ALJ did not address this short term
limitation, the ALJ specifically referenced Dr. Richardson's
observation in April 2010 that Egan's pain was well controlled in
determining her light work RFC.  Admin. R. 12, 516.  Although an
ALJ is not entitled to disregard relevant medical facts,
determination of the RFC is the province of the ALJ based on all
the medical evidence in the file.  See 20 C.F.R. § 404.1527.  Dr.

_____

regarding non-work relationships), in the last treatment note
from Dr. Estey's practice, Egan was assessed to be "more stable,
less anxious." Id. at 550.  At that appointment, Egan stated
that her "medicine seems to be working," and her "anxiety is more
manageable." Id. at 549.  These notes appear to contradict Dr.
Estey's functional assessment less than two months later. Id. at
552.

Richardson's February 2009 note was limited "until further evaluation and treatment is reviewed with the patient," and therefore clearly modified by Dr. Richardson's later analysis. Admin. R. 266.  Dr. Richardson's February evaluation was not supported by his later observations, and indeed the limitation was never extended by Dr. Richardson.  Therefore, it was not entitled to any significant weight by the ALJ.[18]  Cf. 20 C.F.R. § 404.1527(d).

## B. Work Opportunities

Egan next contends that the ALJ erred in concluding at Step 4 that she was able to perform her prior work, 20 C.F.R. §§ 404.1520(a)(4)(iv),(f), and at Step 5 that there were ample other work opportunities available to her in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),(g).  At the fourth step of the evaluation process, the ALJ determines whether the impairment prevents the claimant from performing the work she has performed in the past.  If the claimant is able to perform her previous work, she is not disabled.  20 C.F.R. § 404.1520(e).  If

---

[18]Similarly, Egan faults the ALJ for failing to discuss the conclusions of consulting psychiatrist Dr. Michael Schneider and how those conclusions were inconsistent with Dr. Estey's findings.  This argument lacks merit because Dr. Schneider's findings supported the ALJ, who is not required to discuss evidence in his order that is cumulative and does not support a claimant's disability claim.  See, e.g., Lord, 114 F. Supp. 2d at 13.

the claimant is unable to perform prior work, then the fifth step
calls for an analysis of the claimant's ability to perform other
work in light of her RFC, as well as age, education, and work
experience.  If the claimant is unable to perform other work in
the national economy, then she is entitled to disability
benefits.  20 C.F.R. § 404.1520(f); Vega-Valentin v. Astrue, 725
F. Supp. 2d 264, 268 (D.P.R. 2010).  The claimant has the burden,
at Step 4, of proving that she cannot return to her former
employment because of the alleged disability.  Santiago v. Sec'y
of Health & Human Servs., 944 F.2d 1, 5 (1st Cir.1991).  Once a
claimant has demonstrated an inability to return to her previous
employment, the Commissioner has the burden, at Step 5, to prove
the existence of other jobs in the national economy the claimant
can perform.  Ortiz v. Sec'y of Health & Human Servs., 890 F.2d
520, 524 (1st Cir.1989).

Egan first contends that the ALJ erred in finding that given
her light capacity RFC, she was capable of performing her past
relevant work as a secretary.  Specifically, the ALJ concluded:

> The record shows that the claimant's past job as a
> secretary was performed [within] the last 15 years, at
> the substantial gainful activity level, and for enough
> time to learn the skills of the job.  (Exhibit 4E, 7E,
> and the Dictionary of Occupational Titles).  In
> comparing the claimant's residual functional capacity
> with the physical and mental demands of this work, I
> find that the claimant is able to perform it as
> generally performed. (Exhibit 7E, 4E, Dictionary of
> Occupational Titles).

Admin. R. 13.  Egan alleges because "[t]here is no particularized
finding that [Egan] can do the physical and mental demands of
[her] past work as a secretary,"  Cl. Br. 10, the ALJ committed
reversible error.  The court disagrees because although the ALJ's
discussion could have been better developed, it was not so
lacking as to warrant a remand.

     "The RFC to meet the physical and mental demands of jobs a
claimant has performed in the past (either the specific job a
claimant performed or the same kind of work as it is customarily
performed throughout the economy) is generally . . . sufficient
. . . for a finding of 'not disabled.'"  SSR 82-62, 1982 WL
31386, at *3; see generally 20 C.F.R. §§ 404.1520(e),(f),
404.1560(b).  The claimant is responsible for providing evidence
concerning the vocational demands of her past work.  SSR 82-62,
1982 WL 31386, at *3; 20 C.F.R. § 404.1560(b).  The ALJ then
makes a determination of the claimant's ability to do prior work
based on a

> careful appraisal of (1) the individual's statements as
> to which past work requirements can no longer be met
> and the reason(s) for his or her inability to meet
> those requirements; (2) medical evidence establishing
> how the impairment limits [the] ability to meet the
> physical and mental requirements of the work; and (3)
> . . . supplementary or corroborative information from
> other sources such as employers, the *Dictionary of
> Occupational Titles*, etc., on the requirements of the
> work as generally performed in the economy.

SSR 82-62, 1982 WL 31386, at *3; see generally, 20 C.F.R.
§ 404.1560(b)(2) (allowing an ALJ to use the Dictionary of
Occupational Titles "to obtain evidence we need to help us
determine whether you can do your past relevant work").
Further, "for a claim involving a mental/emotional impairment,
care must be taken to obtain a precise description of the
particular job duties which are likely to produce tension and
anxiety, . . . in order to determine if the claimant's mental
impairment is compatible with the performance of such work." SSR
82-62, 1982 WL 31386, at *3.

Here, the ALJ exercised due care.  The record contained, and
indeed the ALJ referenced at both Step 3 and Step 4, evidence
indicating that while Egan had only mild limitations in daily
activities, concentration, persistence, and pace, she was only
moderately challenged by her inability to function socially.  See
Admin. R. 10-13.  The ALJ recognized her treating physician's
note that Egan's physical pain was 'well-controlled," id. at 516,
and indeed an examination at the Dartmouth Hitchcock Spine Center
revealed that Egan "has no true myelopathic symptoms and I am
questioning whether she [exhibits] radicular symptoms."  Id. at
436.  The ALJ specifically took those factors into account in
fashioning restrictions on her light RFC, id., as well as her
ability to perform prior work as a secretary as defined by the

Dictionary of Occupational Titles.  Id.; cf. Gillis v. Astrue, No. 08-cv-225-SM, 2009 WL 948655, at *8-*9 (D.N.H. Apr. 6, 2009) (noting that ALJ considered claimant's mental abilities to perform past work and incorporated them into the Step 4 finding). The court recognizes that the ALJ's Step 3 discussion and Step 4 RFC analysis was quite detailed, while his determination that she could perform her prior work merely referenced exhibits in the record and the Dictionary of Occupational Titles.[19]  His notations make clear, however, that the ALJ considered his prior discussion of Egan's mental and physical capabilities, record evidence, and the Dictionary of Occupational Titles when determining that Egan could undertake secretarial work as it is generally performed in the economy.

Finally, Egan's argument that the ALJ erred in relying on the Grid for his alternative Step 5 finding is meritless.  At Step 5 of the disability analysis, "the burden shifts to the Secretary to show the existence of other jobs in the national economy" that the claimant can perform despite his or her impairments.  Guyton v. Apfel, 20 F. Supp. 2d 156, 162 (D. Mass. 1998) (quotations omitted).  Where the claimant's limitations are

---

[19]The regulations specifically allow the ALJ to use the Dictionary of Occupational Titles "to obtain evidence we need to help us determine whether you can do your past relevant work." 20 C.F.R. § 404.1560(b)(2).

exclusively exertional, the Commissioner can satisfy his burden through the use of the "Grid," a regulatory "matrix of the applicant's exertional capacity, age, education, and work experience.  If the facts of the applicant's situation fit within the Grid's categories, the Grid directs a conclusion as to whether the individual is or is not disabled." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (quotations omitted); see generally, 20 C.F.R. pt. 404, subpt. P, App. 2, § 200; see, e.g., Ortiz, 890 F.2d at 524.

In cases where a claimant suffers from both exertional and non-exertional limitations,

> [i]t is permissible for the Administrative Law Judge to rely on the Grid where [he] concludes that these nonexertional impairments or limitations impose no significant restriction on the range of work a claimant is exertionally able to perform.  Moreover, if a non-strength impairment, even though considered significant, has the effect only of reducing that occupational base marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability.  Yet the more that occupational base is reduced by a nonexertional impairment, the less applicable are the factual predicates underlying the Grid rules, and the greater is the need for vocational evidence.

Guyton, 20 F. Supp. 2d at 163 (quotations and citations omitted). So long as the record "amply support[s]" the conclusion that the claimant's nonexertional limitations do not interfere with a full range of work, reliance on the Grid is appropriate. Ortiz, 890 F.2d at 526.

23

The ALJ concluded that although Egan suffered from a severe mental impairment, "the additional [non-exertional] limitations have little or no effect on the occupational base of unskilled light work."  Admin. R. 14.  Although the First Circuit Court of Appeals has cautioned against use of the Grid, and in fact encouraged use of vocational experts, where there are non-exertional limitations, see Ortiz, 890 F.2d at 524-26, use of the Grid "cannot be defeated by low-level personality and emotional disorders that undoubtedly afflict - at least from time to time - vast numbers of the populace."  Id. at 524, n.3 (quotations omitted).  Here, record evidence supports the ALJ's determination that Egan's non-exertional impairments "were not sufficiently severe to necessitate the taking of vocational testimony."  Id. at 525.  As discussed supra, Egan wrote that her "hectic" lifestyle kept her from her hobbies.  Her consulting psychologist determined that although she had some moderate social difficulties because of her tendency to be "direct" and irritable, she was still able to "relate reasonably well in public."  Admin. R. 10, 414.  Dr. Schneider likewise opined that she could function in a "somewhat" isolated workstation.  Id. at 433.  Although it may well have been advisable for the ALJ to take vocational testimony, the court finds no error.

## IV. **CONCLUSION**

Pursuant to sentence four of 42 U.S.C. § 405(g), Egan's motion to reverse and remand the Commissioner's decision[20] is denied.  The Commissioner's motion to affirm the decision[21] is granted.  The Clerk of Court is directed to enter judgment in accordance with this order and close the case.


**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: January 31, 2012

cc:  Bennett B. Mortell, Esq.
     Gretchen Leah Witt, Esq.

---

[20]Document no. 8.

[21]Document no. 9.

25